

**ORDERED in the Southern District of Florida on June 3, 2025.**



**Peter D. Russin, Judge**
**United States Bankruptcy Court**

---

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

| | |
|---|---|
| In re: | Case No.: 21-12188-PDR |
| No Rust Rebar, Inc., | Chapter 7 |
| Debtor. | |
| _____/ | |
| Sonya Salkin Slott, Chapter 7 Trustee, | |
| Plaintiff, | |
| v. | Adv. Proc. No. 23-01087-PDR |
| Yellow Turtle Design, LLC, | |
| Defendant. | |
| _____/ | |

**ORDER GRANTING FINAL JUDGMENT IN FAVOR OF PLAINTIFF**

This adversary proceeding is part of the final chapter in a multi-stage response to the Debtor's principal's abuse of the bankruptcy process and disregard for corporate separateness. It began with the Subchapter V filing of No Rust Rebar, Inc. ("No Rust" or the "Debtor"), a company that, under the direction of its principal, Don Smith, failed to disclose key financial information, commingled assets with related entities, and proposed no feasible path to reorganization.

Following a contested evidentiary hearing, the Court converted the case to Chapter 7, citing gross mismanagement, incomplete and inaccurate schedules, and improper diversion of estate value. The Chapter 7 Trustee subsequently moved for, and obtained, substantive consolidation of four affiliated entities that operated under Smith's common control and were deeply entangled with No Rust in both form and substance. That consolidation—later affirmed on appeal—brought into the estate assets that had been improperly diverted, including $140,000 that was transferred postpetition by Global Energy Sciences, LLC ("GES"), one of the consolidated entities, to Yellow Turtle Design, LLC ("Yellow Turtle" or the "Defendant"). That transfer (the "Transfer") occurred without Court approval.

The Trustee filed this adversary proceeding under 11 U.S.C. §§ 549 and 550 to recover the unauthorized Transfer. For the reasons that follow, the Court finds that the Transfer must be avoided and that Yellow Turtle, as the initial transferee, is liable.

## I.   <u>Background</u>

Plaintiff, Sonya Salkin Slott, Trustee and the Defendant, Yellow Turtle, provided trial memoranda[1] pursuant to the Court's *Agreed Order Establishing Procedures in Lieu of Trial*.[2] With the evidence and briefing now closed, the Court is now tasked with adjudicating the merits.

No Rust was a Florida corporation formed in 2015. Its business centered on commercializing a proprietary process for manufacturing rebar from basalt fiber which was purportedly developed by its principal, Don Smith.[3] Smith operated No Rust alongside several other of his closely held entities, including Raw Materials Corp. ("RMC"), Raw Energy Materials, Inc. ("REM"), Raw, LLC ("Raw"), and most importantly for this proceeding, GES. These entities, together with No Rust, were referred to collectively by Smith as "the Family" and shared physical space, staff, and financial resources.[4]

On March 5, 2021 (the "No Rust Petition Date"), No Rust filed a voluntary petition for relief under Subchapter V of Chapter 11 of the Bankruptcy Code.[5]  The

---

[1] *See Memorandum of Law in Opposition* (Adv. Doc. No. 56); *Memorandum of Law in Support* (Adv. Doc. No. 57).

[2] Adv. Doc. No. 45.

[3] *See Order Converting Case to Chapter 7* (Main Doc. No. 193) ("Conversion Order"), at pp. 2-3. References to documents filed in the main bankruptcy case will be preceded by "Main Doc. No."

[4] Conversion Order at pp. 10–11; See *Order Granting Trustee's Motion to Substantively Consolidate* (Main Doc. No. 441) (the "Substantive Consolidation Order") at p. 8.

[5] *See Voluntary Petition* (Main Doc. No. 1).

bankruptcy was prompted by protracted litigation involving a "property dispute" between No Rust and Green Tech Development, LLC ("Green Tech") over the real property used by No Rust.[6] From the outset, No Rust's schedules reflected substantial irregularities, including failure to disclose receivables due from RMC, omitting d/b/a accounts, and inaccurately reporting inventory.[7]

Following the filing, No Rust made no meaningful progress with its reorganization. The company lacked access to power at its primary facility, had no alternate operational site, and according to Smith, the reorganization depended entirely on speculative funding and a successful resolution of the pending "property dispute" with Green Tech.[8] Thus, while the Subchapter V Trustee initially recommended that No Rust remain in possession, she later reversed course, citing evidence of asset commingling, recordkeeping failures, and the absence of any viable business activity.[9]

After a four-day evidentiary hearing in May of 2022, the Court found that cause existed under 11 U.S.C. § 1112(b) to convert the case. In particular, the Court cited, among other things: (i) No Rust's failure to file complete, accurate schedules; (ii) Smith's use of affiliated entities to divert and conceal value; (iii) gross

---

[6] Conversion Order at pp. 8–9.

[7] Id. at pp. 7–8.

[8] Id. at pp. 6, 10.

[9] Id. at pp. 12–13.

mismanagement of estate resources; and (iv) No Rust's complete lack of operations or prospects for reorganization.[10] The Conversion Order was never appealed.[11] The evidence developed during the conversion proceedings revealed that Smith routinely used the Family entities interchangeably, transferring funds among them without documentation and commingling ownership and assets.[12]

Following the May 2022 conversion of the case, Sonya Salkin Slott was appointed chapter 7 trustee (the "Trustee").[13] On February 3, 2023, the Trustee filed a motion in the main case to substantively consolidate the assets and liabilities of RMC, REM, Raw, and GES (collectively, the "Corporate Entities") into the No Rust estate (the "Substantive Consolidation Motion").[14]

On April 5, 2023, the Trustee commenced this adversary proceeding against Yellow Turtle and GES[15] because she had discovered that, on June 10, 2021—after

---

[10] Conversion Order at pp. 19-30.

[11] Because the Conversion Order was never appealed, its findings are deemed to be true. *See In re Cummings*, 381 B.R. 810, 823 (S.D. Fla. 2007) (Gold, J.), *cited by Smith v. Slott*, Case No. 22-cv-61666-RKA, *Order Affirming Bankruptcy Court*, July 20, 2023 (S.D. Fla) (Altman, J.), (Main Doc. No. 536) ("Order Affirming Substantive Consolidation") at 5, fn. 5.

[12] Id. at pp. 20-23; Substantive Consolidation Order at pp. 14–16.

[13] Main Doc. No. 195.

[14] Main Doc. No. 385.

[15] In January 2017, Smith reinstated an older entity, GES, to hold intellectual property, including the trademark and brand licenses associated with the basalt rebar product. Conversion Order at p. 5. GES made the transfer to Yellow Turtle that is the subject of this adversary. According to its proof of claim, Yellow Turtle, a Florida LLC, had entered into a consulting agreement with No Rust in 2015, whereby Yellow Turtle agreed to perform graphic design services for No Rust and GES with respect to Smith's intellectual property assigned to GES and used by No Rust for $5000 per

---

the No Rust Petition Date—GES transferred by check the amount of $140,000 to Yellow Turtle as repayment for a pre-petition loan.[16] The Court did not authorize the Transfer.[17] In her initial complaint, the Trustee sued Yellow Turtle pursuant to 11 U.S.C. § 549 to avoid and recover the Transfer and sued GES seeking a declaratory judgment that it was the alter ego of No Rust.[18]

On July 12, 2023, the Court granted the Trustee's Substantive Consolidation Motion, finding, among other things, that the assets and operations of the Debtor and the Corporate Entities were hopelessly entangled, rendering separate treatment impractical and inequitable, and substantively consolidating the Corporate Entities into the Debtor's estate.[19] As such, the assets of the Corporate Entities became property of the consolidated Chapter 7 estate as of the No Rust Petition Date.[20]

In its ruling, the Court expressly incorporated and relied upon the factual findings made in the earlier Conversion Order, stating that "no new evidence or argument is necessary to adjudicate the issue of substantive consolidation. All of the

---

month. Main Case Claim No. 11-1. The contract between Yellow Turtle and No Rust was included as an attachment to Yellow Turtle's proof of claim. Interestingly, the contract provides that Yellow Turtle "is a member of No Rust Rebar, Inc." Id.

[16] *Joint Pretrial Stipulation* (Adv. Doc. No. 49) ("Stipulation") at ¶¶ 12, 16.

[17] Id. at ¶¶ 14-15.

[18] *See Complaint* (Adv. Doc. No. 1).

[19] Substantive Consolidation Order at pp. 1–2, 14–18.

[20] Id., as clarified by the *Court's Sua Sponte Order Stating Intended Meaning of Order Granting Trustee's Motion to Substantively Consolidate* (Main Doc. No. 514).

essential factual findings in support of consolidation have already been found."[21] Accordingly, the relevant findings made in the Conversion Order were reaffirmed and incorporated into the Substantive Consolidation Order's factual findings and legal conclusions.

Yellow Turtle, along with Don Smith and the Corporate Entities, appealed the Substantive Consolidation Order, but not the Conversion Order.[22] On July 20, 2023, the District Court affirmed the Substantive Consolidation Order in its entirety, concluding, among other things, that "the Bankruptcy Court's decision to apply, in its consolidation analysis, the factual findings it made during the conversion proceedings" was proper.[23] The Order Affirming Substantive Consolidation has been appealed by Smith to the Eleventh Circuit.[24] Yellow Turtle is not one of the appellants.[25]

On August 2, 2023, presumably in light of the Substantive Consolidation Order, the Trustee filed an Amended Complaint removing the alter ego declaratory judgment count against GES leaving only the one count against Yellow Turtle under 11 U.S.C. §§ 549 and 550, seeking to avoid and recover the postpetition $140,000

---

[21] Substantive Consolidation Order at p. 33.

[22] Main Doc. No. 469. The appeal was heard by Judge Roy K. Altman in Case No. 22-cv-61666-RKA.

[23] Main Doc. No. 536 ("Order Affirming Substantive Consolidation") at p. 56.

[24] *Notice of Appeal as to Bankruptcy Order on Motion (Complaint) for Stay and Other Intermediate Requests for Relief* (Case No. 22-61666-RKA at Doc. No. 43.)

[25] *See* Id.

Transfer.[26]

## II.    Jurisdiction and Venue

This Court has subject matter jurisdiction over the proceeding under 28 U.S.C. § 1334. The Court has statutory authority to hear and determine this matter under 28 U.S.C. § 157 (b)(2)(A), (E), and (H). Venue is proper under 28 U.S.C. § 1409.

## III.    Findings of Facts and Conclusions of Law[27]

The Plaintiff seeks to avoid and recover from Yellow Turtle the postpetition Transfer under 11 U.S.C. §§ 549 and 550. To prevail under § 549(a), a trustee must establish the following elements: (i) there was a transfer; (ii) the transfer involved property of the estate; (iii) the transfer occurred after the commencement of the case; and (iv) the transfer was not authorized by the Bankruptcy Code or by order of the Court.[28] Upon avoiding the transfer under § 549, the Trustee may recover the property transferred or the value of such property, pursuant to § 550(a), unless that transferee establishes a defense under § 550(b).[29] The parties have stipulated that

---

[26] Adv. Doc. No. 17.

[27] The Court issues these findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, and judgment shall be entered separately pursuant to Fed. R. Bankr. P. 7058. *See* Fed. R. Civ. P. 52(a) and 58, made applicable to these proceedings through Fed. R. Bankr. P. 7052 and 7058.

[28] 11 U.S.C. § 549(a).

[29] 11 U.S.C. § 550.

GES transferred $140,000 to Yellow Turtle on June 10, 2021 as repayment for a prepetition loan.[30]

A. <u>The $140,000 Transferred Was Property of the Estate</u>

The Court's Substantive Consolidation Order was entered on July 12, 2023, substantively consolidating GES and the other Corporate Entities into the Debtor's estate as of the No Rust Petition Date.[31] Substantive consolidation involves combining "all the assets of a group of entities into a single survivor," typically the debtor, for purposes of satisfying creditor claims.[32] The process "involves the pooling of the assets and liabilities of two or more related entities" such that "the liabilities of the entities involved are then satisfied from the common pool of assets created by consolidation."[33] As a result of consolidation, the combined entities are treated as a single debtor.[34] The Court's Substantive Consolidation Order was affirmed[35] thus upholding the substantive consolidation of GES into the Debtor's estate as of the No Rust Petition Date. Although the Order Affirming Substantive Consolidation Order

---

[30] Stipulation at ¶¶ 12, 16.

[31] Substantive Consolidation Order as clarified by the *Court's Sua Sponte Order Stating Intended Meaning of Order Granting Trustee's Motion to Substantively Consolidate* (Main Doc. No. 514).

[32] *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005).

[33] *Eastgroup Props. v. Southern Motel Ass'n, Ltd.*, 935 F.2d 245, 248 (11th Cir. 1991).

[34] *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988).

[35] Order Affirming Substantive Consolidation Order.

has been appealed to the Eleventh Circuit, there is no stay pending appeal.[36]

The assets of GES, including the $140,000 transferred to Yellow Turtle postpetition, were substantively consolidated with the Debtor's, as of the No Rust Petition Date, and were therefore property of the bankruptcy estate under 11 U.S.C. § 541 as a matter of law.

B. The Transfer Was Postpetition and Unauthorized

The Transfer to Yellow Turtle was made after the No Rust Petition Date and was made therefore, by definition, postpetition.[37] It is undisputed that Smith as the principal of the Debtor, which included GES, did not obtain Court approval of the Transfer.[38]

Yellow Turtle argues that because the Substantive Consolidation Order had not yet been entered at the time of the Transfer, and because GES—the transferor—had not independently filed for bankruptcy, the Transfer cannot be deemed "postpetition." It further contends that it lacked notice and could not have reasonably foreseen that substantive consolidation would be ordered. These arguments are unavailing. The timing of the entry of the Substantive Consolidation Order is legally irrelevant to the analysis because, as ordered, substantive consolidation was effective as of the No Rust Petition Date. As a result, GES's assets and liabilities were deemed

---

[36] Main Doc. No. 429.

[37] Stipulation at ¶ 13.

[38] Id. at ¶¶ 14-15.

consolidated with No Rust and were part of the bankruptcy estate as of that date. Therefore, the Transfer—which occurred after the No Rust Petition Date—occurred postpetition as a matter of law.

Lack of pre-transfer notice or foreseeability of consolidation does not immunize post-petition conduct under § 549. To the contrary, § 549 imposes strict liability for unauthorized postpetition transfers of estate property and is designed to protect estate assets from unauthorized transfers regardless of the transferor's knowledge or intent.[39] This structure ensures estate integrity and fairness to all creditors and applies equally to insiders and fiduciaries.

The Trustee thus need not prove that Yellow Turtle—or any party—anticipated that substantive consolidation would occur. Once the Substantive Consolidation Order was entered, the consolidated estate is deemed to have existed ab initio as of the No Rust Petition Date. As such, any transfer of property that, by operation of law, is deemed part of the consolidated estate as of the No Rust Petition Date is within the reach of § 549 if transferred postpetition without Court authorization. Here, it is undisputed that the Transfer occurred postpetition and without Court authorization.

---

[39] See Marathon Petroleum Co., LLC v. Cohen (In re Delco Oil, Inc.), 599 F.3d 1255, 1263 (11th Cir. 2010) ("Congress knew how to create exceptions based on transferee's status and culpability. But it chose not to do so when it came to initial transferees of post-petition transfers… We will not create such exceptions in Congress's absence.")

C. <u>Defendant's Arguments Are Without Merit</u>

Yellow Turtle raises fourteen affirmative defenses (each a "Defense," and together the "Defenses"), most of which are inapplicable and all of which are without merit. These defenses can be grouped into three categories: (i) challenges to the Substantive Consolidation Order; (ii) arguments that the Substantive Consolidation Order is not binding on Yellow Turtle; and (iii) inapplicable defenses to § 549.[40]

i. <u>Objection to the Retroactive Application of Substantive Consolidation is Not a Defense</u>

Defenses 7 through 10, as well as 12 and 13, challenge the retroactivity of the Substantive Consolidation Order. For example, Affirmative Defense 7 states:

> The Sub Con Order was not retroactive, and any alleged transfers occurred prior [to] the date that payments were made by the consolidated Debtors. The subsequent modification of the Sub Con Order was unauthorized as the Sub Con Order was on appeal, and improper as a matter of law.[41]

Defenses 8 and 9 are essentially restatements of Defense 7, and Defense 10 is

---

[40] To the extent the Defendant's *Memorandum of Law in Opposition* asserts additional affirmative defenses not contained in its *Amended Answer and Affirmative Defenses to Amended Complaint*, those defenses are waived under Fed. R. Civ. P. 8(c), made applicable by Fed. R. Bankr. P. 7008. For example, the § 549(b) "safe harbor" defense and "In Pari Delicto" defense were not properly asserted and are waived. The Defendant sought to add the "In Pari Delicto" defense with its *Motion to Amend* (Main Case Doc. No. 52), but the Court denied the Motion (Main Case Doc. No. 61). In any event, in pari delicto is not a defense to an avoidance action under 11 U.S.C. § 549. *See Tese-Milner v. Beeler (In re Hampton Hotel Investors, L.P.)*, 289 B.R. 563, 580 (Bankr. S.D. N.Y. 2003) ("Thus the Trustee has the standing, under federal law, to assert, for the benefit of the estate, claims to recover [postpetition transfers] that had been unlawfully paid. It would be turning the… concept of in pari delicto on [its] head to hold that the Trustee lacks standing to recover [unauthorized postpetition] payments.") The safe harbor of § 549(b), too, is not available to the Defendant, as it only applies in involuntary cases, and No Rust's petition was voluntary.

[41] *Amended Answer and Affirmative Defenses to Amended Complaint* (Adv. Doc. No. 38) ("Defenses") at p. 3.

identical to Defense 9.

Eleventh Circuit precedent explicitly permits retroactive application of substantive consolidation to ensure equitable outcomes and to address commingling and misuse of corporate form effectively.[42] Courts within the Eleventh Circuit recognize that retroactive application of substantive consolidation does not violate due process where the facts demonstrate pervasive commingling, abuse of corporate form, or other equitable factors requiring consolidation ab initio.[43] Here, the consolidation was based on thorough evidentiary findings made after full notice and opportunity to be heard[44] and affirmed on appeal.

Additionally, any objection to the retroactive effect of the Substantive Consolidation Order is an issue that should have been raised on appeal of that Order. Yellow Turtle, along with Smith and the other Corporate Entities, appealed the Substantive Consolidation Order to the District Court, which affirmed it in full.[45] Thus, Yellow Turtle's objections to the retroactive effect of the Substantive Consolidation Order have been conclusively addressed and rejected. Yellow Turtle is bound by the Substantive Consolidation Order, as "[u]nder the law-of-the-case

---

[42] *Eastgroup Props. v. S. Motel Ass'n*, 935 F.2d 245, 248–50 (11th Cir. 1991).

[43] *See Eastgroup Props.*, 935 F.2d at 248–50.

[44] Substantive Consolidation Order at p. 28 (providing that all interest parties were properly served under Rule 7004); Order Affirming Substantive Consolidation at p. 30.

[45] Order Affirming Substantive Consolidation.

doctrine, an appellate court's findings of fact and conclusions of law are generally binding in all subsequent proceedings in the same case."[46] Accordingly, the District Court's affirmance of the Substantive Consolidation Order "forecloses relitigation of issues expressly or impliedly decided by the [district] court."[47]

Defenses 7 through 10 repeat the phrase "[t]he subsequent modification of the Sub Con Order was unauthorized as the Sub Con Order was on appeal, and improper as a matter of law." The Defendant fails to state how exactly the Substantive Consolidation Order was modified, leaving this Court to assume it is referring to the *Sua Sponte Order Stating Intended Meaning Of Order Granting Trustee's Motion To Substantively Consolidate*.[48] However, as the Order Stating Intended Meaning makes clear, the Court was not modifying anything: the Court was "merely telling the parties what the words that are written mean," which it felt compelled to do because the parties "argue[d that] the words in the Sub-Con Order mean different things."[49] Further, the Court noted:

> [W]hile the filing of a notice of appeal generally "confers jurisdiction on the court of appeals and divests the court of its control over those aspects of the case involved in the appeal" an exception to this rule applies where the lower court acts in aid of appellate review. *Educ. Credit Mgmt. Corp. v. Mosley (In re Mosley)*, 494 F.3d 1320, 1328 (11th Cir. 2007) (quoting

---

[46] *Alicea v. Comm'r of Soc. Sec.*, 855 Fed. Appx. 494, 496 (11th Cir. 2021). *See United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997).).

[47] Id. (citing *Johnson v. KeyBank Nat'l Ass'n (In re Checking Account Overdraft Litig.)*, 754 F.3d 1290, 1296 (11th Cir. 2014)).

[48] Main Doc. No. 514.

[49] Id. at p. 5.

*Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58, 103 S. Ct. 400, 74 L. Ed. 2d 225 (1982)). In this case, even if the Court's statement of the meaning is interpreted as a "correction" within the scope of Rule 60(a), the "correction" will most certainly aid appellate review.[50]

Given the limitations on divestiture and the timing of the entry of the Order Stating Intended Meaning, it cannot be gainsaid that the Order Affirming Substantive Consolidation did not result in the Substantive Consolidation Order becoming law of this case.

Defense 12 claims that the Substantive Consolidation Order was "an ultra vires act in violation of the Fifth Amendment in that Defendant has been deprived of property without due process of law."[51] Yellow Turtle offers no support for this argument. What property has Yellow Turtle been deprived of? The $140,000 Transfer from GES is certainly not a deprivation. And while that Transfer has led to this adversary proceeding, Yellow Turtle has been provided all required due process. As to substantive consolidation, Yellow Turtle was served with the Substantive Consolidation Motion,[52] appealed the Substantive Consolidation Order, and lost that appeal.[53] The fact is that Yellow Turtle is the recipient of an unauthorized postpetition transfer, which the Bankruptcy Code explicitly permits the Trustee to

---

[50] Id.

[51] Defenses at p. 4.

[52] Stipulation at ¶ 6.

[53] *See* Order Affirming Substantive Consolidation.

recover.[54] There is no Constitutional issue presented.

Defense 13 likewise challenges the Substantive Consolidation Order, calling substantive consolidation an "outdated equitable action." The Defendant cites no authority for this proposition because there is none. There is an abundance of case law recognizing substantive consolidation, including *Eastgroup Props. v. S. Motel Ass'n*,[55] *In re Owens Corning*,[56] *In re Augie/Restivo Baking Co., Ltd*,[57] *In re Vecco Construction Industries, Inc.*,[58] and the District Court's Order Affirming Substantive Consolidation. Substantive consolidation is alive and well, offering courts an equitable remedy to address misuse of corporate form.

And again, the Defendant is precluded from relitigating the factual findings and legal conclusions underpinning the Court's Substantive Consolidation Order. Those findings were affirmed on appeal. Under the doctrine of collateral estoppel, Yellow Turtle may not reargue issues that were actually litigated and decided in the prior substantive consolidation proceedings to which it was a party.[59] Moreover, the Substantive Consolidation Order is the law of the case and binding in this

---

[54] *See* 11 U.S.C. §§ 549 and 550.

[55] *Eastgroup Props. v. S. Motel Ass'n*, 935 F.2d 245, 248–50 (11th Cir. 1991).

[56] *In re Owens Corning*, 419 F.3d 195, 205 (3d Cir. 2005).

[57] *In re Augie/Restivo Baking Co., Ltd.*, 860 F.2d 515, 518 (2d Cir. 1988).

[58] *In re Vecco Construction Industries, Inc.*, 4 B.R. 407, 410 (E.D. Va. 1980).

[59] *See In re St. Laurent*, 991 F.2d 672, 675 (11th Cir. 1993).

proceeding.[60] The Court therefore rejects the Defendant's attempt to collaterally attack the substantive consolidation ruling or the findings supporting it.

    ii.  <u>The Defendant is Bound by the Substantive Consolidation Order</u>

Defenses 11 and 14 argue that the Defendant is not bound by the Substantive Consolidation Order. Defense 11 asserts that the Substantive Consolidation Order cannot be used for "issue preclusion" against Yellow Turtle since neither it nor the Plaintiff were parties to the Conversion Order, which is the basis for the Substantive Consolidation Order. Yellow Turtle raised this argument in its appeal of the Substantive Consolidation Order.[61] The District Court rejected it, applying federal collateral estoppel law to conclude that this Court's reliance on the findings in the Conversion Order was proper.[62]

Additionally, the Plaintiff of course cannot be a party to the Conversion Order, as it is the Conversion Order that brought the Plaintiff into existence as the Chapter 7 Trustee. A conversion order is a prerequisite, not only for the appointment of the chapter 7 trustee, but also for any adversary proceeding brought by the chapter 7 trustee thereafter. Because it is impossible for a chapter 7 trustee to be a party to a conversion to chapter 7, any such requirement would render conversion impossible.

Yellow Turtle argues that it was required to be a party to the conversion

---

[60] *See Alicea v. Comm'r of Soc. Sec.,* 855 Fed. Appx. 494, 496 (11th Cir. 2021).

[61] *See* Order Affirming Substantive Consolidation.

[62] Id. at p. 41-56.

proceedings that led to the Substantive Consolidation Order and claims that *Dunn v. JPMorgan Chase Bank, N.A.* (*In re Doron*) supports that proposition. *Dunn* does not. *Dunn* holds that Yellow Turtle was required to be a party to the substantive consolidation proceedings.[63] It is undisputed that Yellow Turtle was a party to those proceedings.[64] Yellow Turtle even appealed the Substantive Consolidation Order and lost that appeal.[65]

Defense 14 argues that Federal Rule of Bankruptcy Procedure 7001 requires substantive consolidation to be established by adversary proceeding rather than motion. This argument, too, was raised on appeal and conclusively rejected by the District Court, which held that an adversary proceeding was not mandated by Rule 7001,[66] and further held that even if an adversary proceeding were required, the Substantive Consolidation Order should be upheld under the "harmless error rule."[67]

iii.    The Asserted Defenses to §§ 549 and 550 Are Inapplicable

Defenses 1 through 6 challenge the Trustee's ability to avoid and recover the Transfer under 11 U.S.C. §§ 549 and 550. None of the asserted Defenses are available

---

[63] *Dunn v. JPMorgan Chase Bank, N.A.* (*In re Doron*), 2024 Bankr. LEXIS 912 at *9 (Bankr. S.D. Fla. 2024) (holding that a creditor needed to be served with the substantive consolidation motion to be bound by the substantive consolidation order).

[64] Stipulation at ¶ 6.

[65] See Order Affirming Substantive Consolidation.

[66] Order Affirming Substantive Consolidation at p. 6 (citing *Eastgroup Props. v. S. Motel Ass'n*, 935 F.2d 245, 249 (11th Cir. 1991).

[67] Id. at p. 31 (citing *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 647 (2d Cir. 1988)).

to Yellow Turtle on these facts, and several of them are not recognized defenses to actions under §§ 549 and 550.

Defenses 1, 2, 4, and 6 are defenses under 11 U.S.C. § 550(b). Defense 1 argues that Yellow Turtle gave reasonably equivalent value in exchange for the Transfer, and Defense 2 argues that Yellow Turtle was a good faith transferee. These combine to form the defense under § 550(b)(1), which provides: "(b) the trustee may not recover. . . from— (1) an [immediate or mediate] transferee that takes for value, including satisfaction or securing of a present or antecedent debt, in good faith, and without knowledge of the voidability of the transfer avoided."[68]

However defenses under 11 U.S.C. § 550(b) apply only to "any immediate or mediate transferee of [an] initial transferee" of property of the estate."[69] Under Eleventh Circuit precedent "a literal or rigid interpretation of the statutory term 'initial transferee' in § 550(a) means that the first recipient" of the debtor's funds is the initial transferee.[70] The record indicates that the Transfer was made directly from GES—as a substantively consolidated debtor—to Yellow Turtle, making Yellow Turtle the initial transferee under § 550(a).[71] Accordingly, Defenses 1 and 2, which

---

[68] 11 U.S.C. § 550(b)(1).

[69] 11 U.S.C. § 550(b) provides "[t]he trustee may not recover under section (a)(2) of this section from. . ." The reference to section (a)(2) is pertinent, as (a)(2) only applies to the trustee attempting to recover from "any immediate or mediate transferee of such initial transferee."

[70] *Martinez v. Hutton (In re Harwell),* 628 F.3d 1312, 1322 (11th Cir. 2010).

[71] Stipulation at ¶ 12.

under § 550(b) are only available to immediate or mediate transferees, do not apply to the initial transferee, Yellow Turtle.[72]

Defenses 4 and 6 argue that GES was a "mere intermediary" or "mere conduit" of the actual transferor. It is true that the Eleventh Circuit has "carved out an equitable exception to the literal statutory language of 'initial transferee,' known as the mere conduit or control test, for initial recipients who are 'mere conduits' with no control" over the transferred funds.[73] In other words, the initial transferee is the party who exercises control over the funds and has the authority to use the money to one's own purpose.[74]

It is odd that Yellow Turtle argues that GES was somehow a mere conduit. A mere conduit of whom? Yellow Turtle does not explain. The Court is left to assume that Yellow Turtle believes it to be No Rust, as No Rust was the original Debtor. But assuming, arguendo, that GES were a mere intermediary of the Transfer, Yellow Turtle would still be the initial transferee. This is because No Rust would be the transferor, GES would be a mere conduit with no control of the funds, and Yellow Turtle would then be the initial transferee with control of the funds. Accordingly, the Transfer would still be recoverable by the Trustee from Yellow Turtle as the initial

---

[72] 11 U.S.C. § 550(b)(2).

[73] *Harwell,* 628 F.3d at 1322.

[74] *Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988) ("[T]he minimum requirement of status as a 'transferee' is dominion over the money or other asset, the right to put the money to one's own purposes.").

transferee, and § 550(b) defenses simply do not apply.

Defense 3 asserts that the transferor, GES, was not insolvent at the time of the Transfer. Insolvency is not a requirement for avoidance under § 549, which is simply concerned with avoiding unauthorized postpetition transfers. While insolvency is an element of avoiding preferences or fraudulent transfers under §§ 547 or 548,[75] it is not an element under § 549.

Finally, Defense 5 argues that the transferor and Yellow Turtle operated as a single enterprise. The Family operating as a single enterprise undergirds the Substantive Consolidation Order. If GES and Yellow Turtle operated as a single enterprise, then Yellow Turtle should have been one of the entities consolidated, placing the $140,000 in the Trustee's hands or obviating the need for the transfer in the first instance. However, Yellow Turtle was not consolidated, and the Transfer was made, so the Trustee must recover the $140,000 from Yellow Turtle under §§ 549 and 550 to bring the funds back into the estate, where they rightfully belong.

## IV.    Conclusion

The Trustee has demonstrated, and Yellow Turtle has failed to rebut, that: (i) the $140,000 Transfer was of estate property; (ii) the Transfer occurred postpetition; (iii) the Transfer was not authorized under the Bankruptcy Code or by Court order; and (4) the Defendant was the initial transferee. The record leaves no doubt that Yellow Turtle received funds belonging to the bankruptcy estate without prior Court

---

[75] 11 U.S.C. §§ 547(b)(3), 548(a)(1)(B)(ii)(I).

approval. The Bankruptcy Code does not permit such postpetition transfers to stand. The Trustee is therefore entitled to judgment under 11 U.S.C. §§ 549 and 550.

Therefore, the Court **ORDERS**:

1. The postpetition transfer of $140,000 to Yellow Turtle Design, LLC is **AVOIDED** pursuant to 11 U.S.C. § 549.

2. Sonya Salkin Slott, Trustee is authorized to recover $140,000 from Yellow Turtle Design, LLC pursuant to 11 U.S.C. § 550.

3. Sonya Salkin Slott, Trustee is directed to upload a separate Final Judgment consistent with this Order.

# # #

Copies To:
All parties in interest